# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**JOHN R. KAYLOR,** *et al.***,**

    Plaintiffs,

    v.

**MATTHEW LEE DAMSCHRODER,** *et al.***,**

    Defendants.

CASE NO. 3:20 CV 1172

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

Defendant the Village of Elmore, Ohio moves to dismiss the claims asserted against it by Plaintiffs John R. Kaylor and Donna Kaylor. (Doc. 4). Plaintiffs filed a brief in opposition. (Doc. 7). The Village filed a brief in reply. (Doc. 9). For the reasons stated below, the Court grants the Village's motion.

## BACKGROUND

On April 28, 2019, John Kaylor had an informal gathering at his home in Elmore, which was attended by several people. Among the attendees was Defendant Matthew Damschroder, who at the time was the Mayor of Elmore. *See* Doc. 1-1, at 3-4. Around 9:00 p.m., Kaylor and Damschroder had a discussion about Village regulations which were impacting Kaylor's plumbing business. The conversation ended and Kaylor walked outside, where Damschroder attacked him from behind, resulting in serious injuries to Kaylor. Damschroder subsequently was charged with assault. In September 2019, he pled guilty and resigned as Mayor of Elmore.

Plaintiffs filed suit in the Ottawa County, Ohio Common Pleas Court. Defendants – the Village and Damschroder – subsequently removed the case to federal court. (Doc. 1). In their First Amended Complaint, Plaintiffs assert eleven causes of action. *See* Doc. 1-1 Of relevance to the Village's motion to dismiss are five of those claims: vicarious liability / respondeat superior (Count 7); negligent training and supervision (Counts 8 and 9); violation of Plaintiffs' First and Fourteenth Amendment rights, brought pursuant to 42 U.S.C. § 1983 (Count 10); and punitive damages (Count 11).

## STANDARD OF REVIEW

Rule 12 provides for the dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, *Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The plaintiff must offer more than conclusory allegations or legal conclusions masquerading as factual allegations. *Twombly*, 550 U.S. at 555 (complaint must contain something more than "a formulaic recitation of the elements of a cause of action"). A complaint must state sufficient facts which, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a

sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

Courts must read Rule 12(b)(6) in conjunction with Rule 8(a)(2)'s requirement that a plaintiff need offer "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (citing *Twombly*, 550 U.S. at 596); *see also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir. 2008).

## DISCUSSION

The Village argues Plaintiffs' claims against it must be dismissed because Counts 7, 8, and 9 are state-law claims barred by statutory immunity and because Plaintiffs fail to allege sufficient facts to support their claims in Count 10 that Damschroder acted under color of state law. Plaintiffs contend Ohio Revised Code § 2744.09(B) specifically excepts civil claims for alleged violations of a plaintiff's constitutional rights and they have sufficiently alleged the policies, practices, and customs which resulted in the violation of John Kaylor's constitutional rights.

<u>Counts 7, 8, and 9</u>

Ohio law provides that political subdivisions are not liable in damages for injuries allegedly caused by the acts or omissions of the political subdivision or one of its employees, unless a specific exception applies. Ohio Rev. Code § 2744.02. Plaintiffs contend the Village is not entitled to statutory immunity because § 2744.09(B) creates an exception for § 1983 claims. *See, e.g.*, *Summerville v. Forest Park*, 943 N.E.2d 522, 524 (Ohio 2010).

The "first step" in evaluating a § 1983 claim is to "identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). What Plaintiffs implicitly argue

3

– in asserting the Village improperly attempts to attack their allegations "piece-meal" rather than holistically – is that the constitutional violations of John Kaylor's free speech and equal protection rights alleged in Count 10 extend to Plaintiffs' other claims against the Village. *See* Doc. 7, at 8.

The problem this creates for Plaintiffs is one of redundancy. That is, Plaintiffs separately allege the "actions and inactions undertaken by Defendants Damschroder and the Village of Elmore . . . represent impermissible disregard for the fundamental constitutional rights and liberties of the Plaintiffs . . . as enshrined in the First and Fourteenth Amendments." (Doc. 1-1, at 9-10). Count 10 incorporates Plaintiffs' preceding allegations. So, if Plaintiffs meant only to assert their policy and practice claim and their negligent training and supervision claims as § 1983 claims, there was no need for Plaintiffs to include Counts 8 or 9[1] in the First Amended Complaint.

The fact that Plaintiffs included these counts means the more plausible reading of the First Amended Complaint is that Counts 7, 8, and 9 allege violations of Ohio law, not John Kaylor's constitutional rights. Thus, the exception stated in § 2744.09(E) does not apply to those Counts. Further, Plaintiffs fail to show any of the exceptions stated in § 2744.02(B) remove Counts 7, 8, and 9 from the reach of the statutory immunity bestowed by § 2744.02(A). Therefore, the Court grants the Village's motion to dismiss these Counts.

Count 10

Although Plaintiffs incorporate their policy and practice, negligent training, and negligent supervisor claims into Count 10, the Village likewise is entitled to the dismissal of this claim.

A plaintiff asserting a § 1983 claim "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

---

1. Count 7 contains a claim for vicarious liability, and a plaintiff may not sue a local government for vicarious liability under § 1983. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978).

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). A municipality may be held liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). A governmental body cannot be found liable under § 1983 if the plaintiff fails to establish an individual defendant violated the plaintiff's constitutional rights. *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

Accepting the facts alleged as true, Plaintiffs claim that, while a guest in the Kaylors' home on the evening of April 28, 2019, Damschroder attacked John Kaylor from behind and without warning, as Kaylor walked away following a discussion between the two men about the impact of certain Village regulations on Kaylor's plumbing business. These allegations fail to plausibly assert Damschroder acted under color of law in assaulting Kaylor.

A government official "acts under color of law when he exercises power possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law." *Neuens v. City of Columbus*, 275 F. Supp. 2d 894, 900 (S.D. Ohio 2003) (quoting *West*, 487 U.S. at 49 (internal quotation marks and further citation omitted)). "[T]here can be no pretense of acting under color of state law if the challenged conduct is not related in some meaningful way either to the actor's governmental status or to the performance of his duties." *Waters v. City of Morristown, Tenn.*, 242 F.3d 353, 359 (6th Cir. 2001).

Plaintiffs offer two arguments why Damschroder's actions meet the color-of-law requirement: (1) Village regulations and Ohio law clothe mayors like Damschroder with broad and expansive powers, including police powers; and (2) Kaylor only spoke with Damschroder because

5

he was the mayor and thus Damschroder would not have been in a position to assault him if he was not the mayor. Neither argument is sufficient to maintain Plaintiffs' claims.

Even if the Court accepts as true Plaintiffs' argument that Damschroder was "on duty" as mayor while at a private gathering at 9:00 p.m. because Kaylor approached him to discuss Village ordinances and to schedule a meeting to further this discussion, (Doc. 7, at 12-13), Kaylor fails to show Damschroder was in a position to attack him because of Damschroder's official responsibilities. The attack did not take place at Village offices or during an official meeting. Plaintiffs do not allege Damschroder was trespassing at the Kaylors' home; instead, the allegations in the First Amended Complaint fully support the inference that Kaylor invited Damschroder to a private gathering. *Cf. Mooneyhan v. Hawkins*, 1997 WL 685423, *5 (6th Cir.) (unpublished table decision) ("This is not a situation where the officer was in a position to harm his victim because of his exercise of or purported exercise of authority under color of state law.").

Further, by John Kaylor's own admission, the conversation about official business had ended and Kaylor had walked outside of his home. (Doc. 1-1, at 4). Plaintiffs' allegations do not establish Damschroder was acting within his official duties when he followed Kaylor outside and attacked him. *See, e.g.*, *Redding v. St. Eward*, 241 F.3d 530, 533 (6th Cir. 2001) (defendant, an off-duty police officer, did not act under color of law in calling 911, leading to plaintiff's arrest, because defendant's actions were "functionally equivalent to [those] of any private citizen." (citation omitted)); *McNeese v. Vandercook*, 1999 WL 133266, *2 (6th Cir.) (unpublished table decision) (deputy sheriff who assaulted fellow deputy during roll call at the sheriff's office did not act "within the ambit of his official duties," but acted for a personal reason); *Honaker v. Smith*, 256 F.3d 477, 485 (7th Cir. 2001) (defendant did not use his authority as mayor or fire chief to set fire to plaintiff's home). In the same way, Plaintiffs' allegations do not show that Damschroder's

6

decision to follow and attack Kaylor was related in any meaningful way to Damschroder's status as mayor or to the performance of his official duties. *Waters*, 242 F.3d at 359 ("[A] defendant's private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law.").

Plaintiffs' arguments to the contrary do not push their allegations across the line of plausibility. A mayor's status as "a final decision maker," (Doc. 7, at 10-11), or "the chief conservator of the peace," (*id.* at 12), does not mean every action the mayor takes is a state action. Plaintiffs' citation to *In re Removal of Pickering*, 266 N.E.2d 248 (Ohio Ct. App. 1970), does not compel otherwise. The defendant-mayor in that case fired a shotgun between 100 and 120 times, injuring at least one person, while attempting to suppress a riot. *Id.* at 253-54. The court concluded Pickering fired the gun while actively engaged in his official duties, including as the "chief conservator of the peace". *Id.* ("Mayor Pickering, as the chief conservator of peace within the village, had a positive duty to suppress any riot therein and to disperse and apprehend rioters. . . . As it was his duty to suppress and disperse he was required to take aggressive measures using 'such force as is necessary and proper to suppress the riot or disperse or apprehend rioters.'") (quoting Ohio Rev. Code § 2923.51).

By contrast here, even taking as true Plaintiffs' allegation that Kaylor and Damschroder's conversation concerned Kaylor's objections to Village ordinances, the temporal proximity of Damschroder's tortious conduct to his performance of official duties in that conversation offers no more than a "sheer possibility" that the subsequent attack was related to Damschroder's performance of his official duties. *Iqbal*, 556 U.S. at 678.

It is "well settled that one may not recover under Section 1983 on the basis of acts not done 'under color of law.'" *Azar v. Conley*, 456 F.2d 1382, 1388 (6th Cir. 1972). Plaintiffs fail to

7

plausibly allege that Damschroder violated John Kaylor's constitutional rights and therefore they cannot hold the Village liable under § 1983. *Watkins*, 273 F.3d at 687.

While Damschroder did not separately move to dismiss Plaintiffs' § 1983 claims against him, the Court concludes those claims also must be dismissed. *Cf. Catz v. Chalker*, 142 F.3d 279, 285 (6th Cir. 1998) (a plaintiff's claims may be dismissed on the merits *sua sponte* where the plaintiff has had an adequate opportunity to respond to the basis for dismissal) (overruled on other grounds). Plaintiffs have had an adequate opportunity to argue Damschroder acted under color of law. Because this Court concludes Plaintiffs' allegations fail to plausibly establish that Damschroder acted in his official capacity, the Court also concludes Plaintiffs have not alleged a plausible § 1983 claim against Damschroder individually.

Count 11

Lastly, Plaintiffs acknowledge federal law prohibits them from recovering punitive damages from the Village and do not oppose the Village's motion to dismiss the portion of Count 11 that applies to the it. (Doc. 7, at 14 n.3). Thus, the Court grants the Village's motion and dismisses Count 11 only to the extent it seeks punitive damages from the Village. This ruling has no effect on the portion of Count 11 seeking punitive damages against Damschroder individually.

State Law Claims

For the reasons stated above, the Village's motion to dismiss will be granted, and the Court will *sua sponte* dismiss Plaintiffs' § 1983 claim against Damschroder. Because all federal claims are dismissed well in advance of trial, the Court declines to exercise jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' remaining state-law claims, and remands those claims to the Ottawa County Common Pleas Court. *See, e.g.*, *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996).

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that the Village of Elmore's Motion to Dismiss (Doc. 4) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Plaintiffs' § 1983 claims against Defendant Damschroder be, and the same hereby are, DISMISSED; and it is

FURTHER ORDERED that the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims and therefore REMANDS them to the Ottawa County Court of Common Pleas.

s/ <i>James R. Knepp II</i><br>
UNITED STATES DISTRICT JUDGE